UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

-v.-

RAYMOS BETRAND,

                Defendant.

---

15 Cr. 308-1 (KPF)

ORDER

KATHERINE POLK FAILLA, District Judge:

    Defendant Raymos Betrand, who is currently incarcerated at the Federal Correctional Institution in Loretto, Pennsylvania ("FCI Loretto"), has applied for compassionate release in the form of resentencing to time served, pursuant to 18 U.S.C. § 3582(c)(1)(A). (Dkt. #17, 19, 21, 23). In brief, Mr. Betrand contends that he is at an increased risk of contracting, or of having a greater reaction to infection from, the COVID-19 virus because of pre-existing medical conditions. The Government opposes Mr. Betrand's motion. (Dkt. #22). As set forth in the remainder of this Order, the Court denies Mr. Betrand's motion for compassionate release.

## BACKGROUND

    On July 20, 1999, Mr. Betrand and thirteen co-defendants were charged in a sixteen-count indictment with various cocaine-trafficking offenses in the United States District Court for the Western District of Virginia. (*See United States* v. *Hamlett*, No. 6:99-cr-70054 (W.D. Va.), Dkt. ("W.D. Va. Dkt.") #1). Mr. Betrand was arrested on September 9, 1999, in the Middle District of North Carolina, and arrived in the Western District of Virginia on October 4, 1999. (W.D. Va. Dkt. #113, Minute Entries for October 4, 1999). On April 10, 2000,

Mr. Betrand pleaded guilty to conspiring to distribute more than 1.5 kilograms of cocaine base (in a form commonly known as "crack" cocaine), and on July 7, 2000, he was sentenced principally to a term of 180 months' imprisonment. (W.D. Va. Dkt. #230, 231, 265; *see also* W.D. Va. Dkt. #295 (plea transcript), 623 (sentencing transcript)).  In 2008, Mr. Betrand moved twice for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2), but his requests were denied. (W.D. Va. Dkt. #359, 380, 405).  Mr. Betrand completed his term of imprisonment, and was released to serve his five-year term of supervised release, on or about April 19, 2012.

On May 27, 2015, Mr. Betrand's supervised release was transferred to this District.  (Dkt. #1, 3).  Thereafter, on July 9, 2015, this Court issued a warrant for Mr. Betrand's arrest, as a result of his arrest and prosecution in New York State court for heroin trafficking.  (Dkt. #4).  In December 2015, while serving the six-year sentence imposed for his heroin-trafficking activities, Mr. Betrand appeared in this District to be arraigned on a single specification charging him with violating his conditions of supervised release by committing a state crime.  (Dkt. #6, 8, 9 (transcript)).  The specification implicated a statutory maximum term of five years' imprisonment and a suggested range under Chapter 7 of the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") of 27 to 33 months' imprisonment; the Probation Department recommended that Mr. Betrand's term of supervised release be revoked, and that the Court sentence him to a term of 27 months' imprisonment with no reimposition of supervised release.

At a conference before this Court on December 22, 2015, Mr. Betrand admitted to the specification. (Dkt. #9). On February 19, 2016, the Court sentenced Mr. Betrand on the specification. (Dkt. #14 (judgment), 15 (transcript)). The Court began the sentencing proceeding by discussing with defense counsel the six-year term to which Mr. Betrand had been sentenced on the heroin trafficking, and defense counsel's efforts to have Mr. Betrand resentenced on that offense. (Dkt. #15 at 4-10). The Court also confirmed with the Government that it was seeking the termination of Mr. Betrand's federal supervised release (*id.* at 10-11), and heard argument from defense counsel regarding the potential concurrency of Mr. Betrand's state and federal sentences (*id.* at 11-12).

Ultimately, the Court determined to impose a below-Guidelines sentence to run consecutively to the state sentence Mr. Betrand was then serving:

> I will tell you, Mr. Betrand, that precisely because it is a breach of trust I am going to impose a consecutive term. But I want to talk to you about the length of that term.
>
> I have thought very hard about Mr. Foy's very, very thoughtful and well presented comments to me about why it should be concurrent. But my own review of the case law and my own thinking about this issue suggests to me that it should be consecutive.
>
> I walked out here earlier thinking that I was going to do something closer to guidelines range, policy statement range. But actually your discussions with me [have] made me rethink that because you did so many things that suggested that you were walking away from narcotics trafficking that it's a shame that you found yourself again engaged in narcotics trafficking.

3

> The personal training. I saw the tests that you took to get special certification, both with respect to I think the heart savers program and the prenatal care program. I now understand your application to the sanitation department. I understood already your application to the MTA.
>
> And so while I was going to go much closer to the range of 27 to 33 months, I'm going to impose — I'm going to revoke supervised release and impose a term of twelve months consecutive to the term that you are serving in the state court.
>
> I will not reimpose supervised release based on my discussions with both counsel about the fact that you will be on an analogue of supervised release in the state court system.
>
> And I think that sentence in this matter is a fair incremental punishment for the breach of trust.

(Dkt. #15 at 22-23). After completing his state sentence, Mr. Betrand began serving his federal sentence; he is currently at FCI Loretto.

On May 8, 2020, Mr. Betrand filed a *pro se* application for early release or transfer to home confinement. (Dkt. #17). A counseled supplemental brief was filed on June 15, 2020. (Dkt. #19, 21). Stated summarily, Mr. Betrand seeks immediate release from custody and resentencing to a term of time served based on the "COVID-19 pandemic, coupled with the dangerous conditions and significant safety limitations within prisons" (Dkt. #19 at 4), as well as Mr. Betrand's medical conditions of asthma, high blood pressure, and anemia (*id.* at 5). The Government filed an opposition letter brief on June 22, 2020. (Dkt. #22). Mr. Betrand then filed a counseled reply on June 24, 2020. (Dkt. #23).

## APPLICABLE LAW

Under 18 U.S.C. § 3582(c)(1)(A), as modified by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), a court may reduce a defendant's sentence upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant.  A defendant may move under § 3582(c)(1)(A) only after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

When considering an application under § 3582(c)(1)(A), a court may reduce a defendant's sentence only if it finds that "extraordinary and compelling reasons warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A)(i).  In making this determination, the court must consider the "the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable." *Id.* § 3582(c)(1)(A).  "The defendant has the burden to show he is entitled to a sentence reduction." *United States* v. *Ebbers*, No. 02 Cr. 1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020) (citing *United States* v. *Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992)).

Congress has delegated responsibility to the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction."  28 U.S.C. § 994(t).  The Sentencing Commission has determined that a defendant's circumstances meet this standard, *inter alia*,

5

when the defendant is "suffering from a terminal illness" or a "serious physical or medical condition ... that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility," or if, in the judgment of the BOP, the defendant's circumstances are extraordinary and compelling for "other reasons." U.S.S.G. § 1B1.13(1)(A) & Application Note 1(A), (D).  Following the passage of the First Step Act, courts may independently determine whether such "other reasons" are present in a given case, without deference to the determination made by the BOP.  *See United States* v. *Lisi*, No. 15 Cr. 457 (KPF), 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020).  In addition, the Sentencing Commission counsels that a court should reduce a defendant's sentence only after determining that "[t]he defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

## DISCUSSION

Mr. Betrand's motion is properly before the Court because the Bureau of Prisons ("BOP") denied his compassionate release request on June 5, 2020. (Dkt. #21).  The issue at hand is whether Mr. Betrand has identified "extraordinary and compelling reasons" warranting his release.  The Court finds that he has not.

To begin, Mr. Betrand argues that the conditions of his incarceration at FCI Loretto place him at a higher risk of contracting, or of having a greater reaction to infection from, the COVID-19 virus because of the nature of his confinement at the facility, his existing medical conditions, and the claimed

when the defendant is "suffering from a terminal illness" or a "serious physical or medical condition ... that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility," or if, in the judgment of the BOP, the defendant's circumstances are extraordinary and compelling for "other reasons." U.S.S.G. § 1B1.13(1)(A) & Application Note 1(A), (D).  Following the passage of the First Step Act, courts may independently determine whether such "other reasons" are present in a given case, without deference to the determination made by the BOP.  *See United States* v. *Lisi*, No. 15 Cr. 457 (KPF), 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020).  In addition, the Sentencing Commission counsels that a court should reduce a defendant's sentence only after determining that "[t]he defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

## DISCUSSION

Mr. Betrand's motion is properly before the Court because the Bureau of Prisons ("BOP") denied his compassionate release request on June 5, 2020. (Dkt. #21).  The issue at hand is whether Mr. Betrand has identified "extraordinary and compelling reasons" warranting his release.  The Court finds that he has not.

To begin, Mr. Betrand argues that the conditions of his incarceration at FCI Loretto place him at a higher risk of contracting, or of having a greater reaction to infection from, the COVID-19 virus because of the nature of his confinement at the facility, his existing medical conditions, and the claimed

inability of prison staff to handle the outbreak.  The Court recognizes, as do the parties, that sister courts in this District have granted, and denied, compassionate release motions based on the existence of the COVID-19 pandemic and the risks of its transmission at prisons.  (*See, e.g.*, Dkt. #19 at 13-14, 19-22 (defense listing of cases granting compassionate release to inmates); Dkt. #22 at 9-12 (Government listing of cases denying compassionate release to inmates)).  This Court aligns itself with those courts that have found "that the risks posed by the pandemic alone do not constitute extraordinary and compelling reasons for release, absent additional factors such as advanced age or *serious underlying health conditions* that place a defendant at greater risk of negative complications from the disease."  *United States* v. *Nwankwo*, No. 12 Cr. 31 (VM), 2020 WL 2490044, at *1-2 (S.D.N.Y. May 14, 2020) (emphasis added) (collecting cases); *see also United States* v. *Brady*, No. 18 Cr. 316 (PAC), 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020) ("Instead, compassionate release motions amid the COVID-19 pandemic have required a 'fact-intensive' inquiry, made in the 'unique circumstances' and 'context' of each individual defendant.  In practice, courts in this district have considered the age of the prisoner; the severity and documented history of the defendant's health conditions, as well as the defendant's history of managing those conditions in prison; the proliferation and status of infections in the prison facility; the proportion of the term of incarceration that has been served by the prisoner; and the sentencing factors in 18 U.S.C. § 3553(a), with particular

emphasis on the seriousness of the offense, the deterrent effect of the punishment, and the need to protect the public." (internal citations omitted)).

Mr. Betrand has not demonstrated the existence of extraordinary and compelling circumstances in his case.  Mr. Betrand is 49 years old, an age at which he faces a slightly elevated risk of hospitalization or death from COVID-19.  *See* Weekly Updates by Select Demographic and Geographic Characteristics, CENTER FOR DISEASE CONTROL, https://www.cdc.gov/nchs/nvss/vsrr/covid_weekly/index.htm#AgeAndSex (accessed July 14, 2020).  But while it is true that Mr. Betrand has a documented history of asthma, his condition is neither moderate nor severe. (Dkt. #22, Sealed Ex. A & B (noting mild asthma, with last attack occurring at age 6, and no prior history of hospitalization)).  The Government has confirmed that Mr. Betrand currently has an inhaler for his asthma at FCI Loretto, and there is nothing to suggest that Mr. Betrand has been unable to care for himself or has been neglected by BOP medical personnel.  (*Id.*).  What is more, the CDC has identified only "moderate to severe asthma" as a comorbidity that "might" result in an "increased risk for severe illness from COVID-19," and Mr. Betrand has not demonstrated either degree of severity.  *See* CENTERS FOR DISEASE CONTROL AND PREVENTION, People with Moderate to Severe Asthma, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/peoplewithmedicalconditions.html (accessed July 14, 2020).[1]

---

[1]  *See also United States* v. *Garcia*, No. 16 Cr. 719-2 (RJS), 2020 WL 2539078, at *2 (S.D.N.Y. May 19, 2020):

The same can be said for the other medical conditions that Mr. Betrand reports. Mr. Betrand had two high blood pressure readings in March 2020, but he has not been diagnosed with hypertension. (Dkt. #22 at Ex. A). Even if he were so diagnosed, high blood pressure is a condition that, according to the latest information from the CDC, merely "might" result in "an increased risk for severe illness from COVID-19." https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/peoplewithmedicalconditions.html (accessed July 14, 2020). And Mr. Betrand's iron deficiency anemia is not listed among the CDC risk factors.

Although the Court is concerned by Mr. Betrand's discussion of the conditions at FCI Loretto (*see* Dkt. #19 at 18-19), it has also considered the BOP's Pandemic Influenza Plan, *see* https://www.bop.gov/coronavirus/ (accessed July 14, 2020). It concludes on balance that the danger that Mr.

---

First, the Court is skeptical that by merely alleging that he "has asthma, ... is in prison, and [that] there is a COVID-19 outbreak nationwide," Garcia presents the type of "extraordinary and compelling reasons" that demand relief. *See United States* v. *Rodriguez*, No. 16-cr-167 (LAP), 2020 WL 1866040, at *4 (S.D.N.Y. Apr. 14, 2020) (rejecting a similar compassionate release motion). Indeed, the Court has only limited information about the severity of Garcia's asthma and is also mindful that the MDC and other federal detention facilities are undertaking steps to minimize the danger COVID-19 poses to inmates (Gov't Ltr. at 4-5 (describing those steps)). *See, e.g., United States* v. *Lynch*, No. 20-cr-202 (LAP), 2020 WL 2145363, at *3 (S.D.N.Y. May 5, 2020) (denying bail where the defendant "proffer[ed] no medical complications that he ha[d] experienced ... as a result of his asthma" and where "the [g]overnment ... detailed the steps taken by [the] Bureau of Prisons in general and the MCC in particular to minimize the effect of COVID-19"); *United States* v. *Belle*, No. 18-cr-117 (VAB), 2020 WL 2129412, at *5 (D. Conn. May 5, 2020) (holding that the mere fact that a defendant has asthma is not enough to demonstrate that he is at severe risk from COVID-19 should he remain incarcerated).

Betrand faces from infection with COVID-19, even accounting for his medical conditions, does not amount to an extraordinary and compelling reason for granting compassionate release.  *Cf. United States* v. *Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("We do not mean to minimize the risks that COVID-19 poses in the federal prison system, particularly for inmates like Raia.  But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").  It is significant to the Court that even now, two months after Mr. Betrand's initial application for compassionate release, there are still no confirmed cases of COVID-19 among the inmates or staff at FCI Loretto.  *See* https://www.bop.gov/coronavirus/ (last accessed July 14, 2020).  And while Mr. Betrand attributes that figure to an absence of testing, data from the BOP proves the contrary.  *See* COVID-19 Inmate Test Information, https://www.bop.gov/coronavirus (noting 45 inmates tested at FCI Loretto with no positive responses) (last accessed July 14, 2020).

Separately, the factors set forth in 18 U.S.C. § 3553(a) counsel against granting Mr. Betrand's motion.  Those factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need "to protect the public from further crimes of the defendant."  *See* 18 U.S.C. § 3553(a)(1), (a)(2)(C).  While on supervised release for a significant crack cocaine-trafficking offense, for which he was sentenced to a term of imprisonment of 15 years, Mr. Betrand assumed a key role in a

multi-state heroin-distribution network. The Court varied downward significantly when it sentenced Mr. Betrand for this egregious breach of the Court's trust; it intended then, and intends now, for him to serve the totality of that sentence. Thus, the Court finds that the § 3553(a) factors weigh against granting Mr. Betrand's motion.[2]

## CONCLUSION

For the foregoing reasons, Defendant Mr. Betrand's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is DENIED. The Clerk of Court is directed to terminate the motions at docket entries 19 and 21.

SO ORDERED.

Dated: July 15, 2020
       New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

---

[2]  To the extent not already pursued, Mr. Betrand may pursue relief in the form of a furlough under 18 U.S.C. § 3622 or home confinement as contemplated in the CARES Act, Pub. L. No. 116-136 (2020), and the Attorney General's April 3, 2020 memorandum to the BOP. The decision to grant that relief, however, is reserved to the discretion of the BOP.